Linda D. **KAGER**, Plaintiff—Appellant,

v.

Michael J. **ASTRUE**,[*] **Commissioner of Social Security,** Defendant— Appellee.

No. 05–36136.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 27, 2007.

Filed Nov. 26, 2007.

---

[*] Michael J. Astrue is substituted for his predecessor Jo Anne B. Barnhart as Commissioner of the Social Security Administration. *See* Fed. R.App. P. 43(c)(2).

Rosemary B. Schurman, Esq., Law Office of Rosemary B. Schurman, Kirkland, WA, for Plaintiff–Appellant.

Jeffrey H. Baird, Esq., Social Security Administration, Office of the General Counsel, Brian C. Kipnis, Esq., Office of the U.S. Attorney, Seattle, WA, for Defendant–Appellee.

Before: B. FLETCHER, KLEINFELD, and GOULD, Circuit Judges.

## MEMORANDUM **

Linda D. Kager ("Kager") appeals the district court's order affirming the Commissioner of Social Security's denial of her application for Disability Insurance benefits under Title II of the Social Security Act ("the Act"). We reverse and remand for further proceedings.

We agree with Kager's contention that the administrative law judge ("ALJ"), in assessing Kager's residual functional capacity, failed to provide specific and legitimate reasons for rejecting the opinion of Kager's treating physician, Dr. Blaski. She stated that Kager was disabled following a low-impact motor vehicle accident in February 1996.[1] Although the opinion of Dr. Blaski was contradicted by the non-examining physician Dr. Knudsen, "a treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir.1998).

In his decision,[2] the ALJ acknowledged that Dr. Blaski opined in 1996 that Kager was disabled, but apparently gave that opinion no weight because it was set forth in "brief, conclusory remarks without reference to specific limitations and clinical findings" except for a statement that Kager could not lift more than 10 pounds. The ALJ also found that Dr. Blaski's treatment notes from that time showed that Kager's examination was unremarkable, and lacked "significant objective findings that would support an inability to work." While it is true that the notes setting forth Dr. Blaski's opinion did not themselves refer to specific limitations or clinical findings, Dr. Blaski's other treatment notes did contain objective findings supporting her opinion that Kager was unable to work as an electrologist.[3]

For example, the treatment notes reveal that in June 1996, only two months before Dr. Blaski opined that Kager was disabled, Dr. Blaski found tenderness and muscle

---

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

1. Kager was involved in two subsequent low-impact motor vehicle collisions, in May 1997 and February 1999.

2. Three decisions by an ALJ were issued in this case. The first two, issued on February 21, 2002, and June 18, 2003, were vacated by the Appeals Council. The third decision, issued on March 24, 2004, by its terms incorporated the discussions of the evidence contained in the prior decisions. We therefore treat the three decisions as one for purposes of our discussion.

3. While Dr. Blaski opined that Kager was "totally disabled," Dr. Blaski's treatment notes demonstrate that this opinion referred specifically to Kager's inability to work as an electrologist. For example, in July 1996, a month before Dr. Blaski opined that Kager was disabled, Kager complained that she was hampered in her work as an electrologist due to stiffness in her neck and the need to rest after treating a single patient. Based on that information, Dr. Blaski advised Kager to refrain from working for at least another week.

spasms in the paraspinous muscles of Kager's c-spine and thoracic spine, found that Kager's neck had decreased range of motion in all directions, and found that Kager could not elevate her arms beyond 90 degrees or reach behind her back. In July 1996, Dr. Blaski found that Kager had c-spine and thoracic strain and generalized weakness of the arms and legs.

Dr. Blaski noted similar findings in 1997, when she found that Kager had limitation of motion in elevating her arms, had tenderness at the AC joint area of her right shoulder, and could abduct her right arm only about 30% of the way. Similarly, in 1998, Dr. Blaski found that Kager had limited range of motion in her right arm with inability to abduct beyond 90 degrees or reach behind her back. Dr. Blaski also noted that a massage therapist had found muscle spasms and limited motion of Kager's right shoulder.

These findings support Dr. Blaski's opinion that Kager was unable to work as an electrologist. It was established at the hearings that work as an electrologist requires constant reaching with the arms and making fine hand movements, and Kager's ability to make both motions could reasonably have been impaired by the physical limitations found by Dr. Blaski. Accordingly, Dr. Blaski's disability opinion was well supported by objective evidence and was required to be given substantial weight by the ALJ. *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion ... the more weight we will give that opinion."); *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir.2007) ("[F]actors relevant to evaluating any medical opinion ... include the amount of relevant evidence that supports the opinion and the quality of the explanation provided....").

■ The ALJ's failure to provide specific and legitimate reasons for giving no weight to Dr. Blaski's disability opinion is pertinent, and not harmless error, because the ALJ found Kager not disabled on the ground that she could perform her past relevant work as an electrologist and word processor (which requires arm and hand movements not dissimilar to those required for working as an electrologist). *Cf. Batson v. Comm'r of the SSA,* 359 F.3d 1190, 1197 (9th Cir.2004) (finding error by ALJ to be harmless).

■ We also agree with Kager that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Drs. Cawthon, Zammit, Herring and Pepper that Kager was suffering, or might have been suffering, from thoracic outlet syndrome. An ALJ may not reject a treating doctor's opinion, even if contradicted by another doctor, without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

In March 1999, Dr. Cawthon, Kager's treating neurologist, opined that Kager had traumatic thoracic outlet syndrome dating back to her 1996 car accident. Dr. Cawthon based his opinion on a review of "all of [Kager's] records," including his own finding that the Adson's test produced numbness in both arms and hands and pain in the upper arms. Dr. Zammit, who found that Kager had the "classic symptomatology that impairs her driving and daily activities such as vacuuming and hair grooming," agreed that Kager's "clinical picture does suggest thoracic outlet syndrome (left more than right) as a probably [sic] diagnosis."

Dr. Herring, while finding that the Adson's test was negative and that an EMG showed no *neurogenic* thoracic outlet syn-

drome, conducted Doppler studies to determine whether Kager might have *arterial* thoracic outlet syndrome. Dr. Herring found the results of the Doppler studies to be "fairly dramatic" because they showed "significant arterial compromise." Dr. Pepper agreed that there was objective evidence of "arterial compression in the thoracic outlet with arm abduction maneuvers, worse on the right than the left." Dr. Pepper was, however, puzzled by the fact that Kager's symptoms were worse on the left than on the right, and explained to Kager that surgery to relieve the arterial compression could increase her tolerance to elevating activities but would not be expected to alleviate all her head, neck and left leg symptoms. Accordingly, Kager did not seek surgery. Nonetheless, Dr. Herring concluded that Kager's Doppler studies were consistent with thoracic outlet syndrome and interpreted Dr. Pepper's opinion to mean that Kager "may have thoracic outlet entrapment as a component of her discomfort."

The ALJ barely discussed this evidence in his decision, noting only that Dr. Cawthon had found thoracic outlet syndrome and that, although electrodiagnostic testing was negative, Doppler studies showed significant arterial compromise. The ALJ did not discuss the opinions of Drs. Zammit and Herring that Kager might have thoracic outlet syndrome. Nor did the ALJ provide specific and legitimate reasons for why the medical opinions that Kager had, or might have, thoracic outlet syndrome, should be rejected. Instead, the ALJ dismissed the possibility of thoracic outlet syndrome simply by observing that no measures, such as surgery, were undertaken and that Dr. Knudsen had stated in his testimony that there was no clinical evidence of thoracic outlet syndrome. This reasoning lacks the specificity required "to allow a reviewing court to confirm that the [evidence] was rejected on permissible grounds and not arbitrarily."

*Benton ex rel. Benton v. Barnhart,* 331 F.3d 1030, 1041 (9th Cir.2003).

■ Because the ALJ failed to provide adequate reasons for rejecting Dr. Blaski's opinion that Kager was disabled as well as the various opinions indicating that Kager had, or might have had, some form of thoracic outlet syndrome, we credit those opinions as a matter of law. *See Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995). Accordingly, we are satisfied that Kager was unable to perform her past relevant work as an electrologist and word processor at the time of her date last insured ("DLI") of June 30, 1999. We therefore remand this case with the instruction that the ALJ proceed to the fifth step of the disability analysis and determine whether Kager could perform other jobs in the economy. *See* 20 C.F.R. § 404.1520(a)(4)(v).

■ Finally, we also agree with Kager that the ALJ failed to give proper weight to Kager's testimony of pain. The ALJ discounted Kager's testimony in part because she had not had "significant pain therapy consistent with her alleged limitations." But the record shows otherwise. First, the record shows that Kager took prescription medication for her pain, including Methocarbomal and the narcotic analgesics Roxicet and Valium. In addition, Kager sought and received treatment from massage therapists and physical therapists, regularly performed water exercises, and repeatedly sought treatment at the University of Washington's Pain Center and from numerous other medical specialists. Thus, Kager's purported lack of pain treatment was not supported by the record and was therefore an improper basis for discounting Kager's testimony of pain.

On remand, the ALJ should credit Kager's testimony of pain since the record shows that Kager had medical impair-

ments which could reasonably have caused some degree of her pain symptoms. *See* 20 C.F.R. § 404.1529; *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir.1996).

We note that on remand, the ALJ should take into account any change in Kager's DLI. At oral argument, counsel explained that Kager's DLI might change as a result of recent payments of back taxes. Such a change could be significant in the disability determination, especially considering that the ALJ, in deciding to give no weight to certain medical opinions that might have supported a finding of disability, relied on the fact that those opinions were rendered after Kager's DLI and therefore did not indicate disability at the time of her DLI.

**REVERSED and REMANDED WITH INSTRUCTIONS.**

KLEINFELD, J., dissenting:

I respectfully dissent.

The ALJ's findings may be set aside only if they were based on legal error, or were not supported by substantial evidence in the record.[1] Neither standard is met.

In addition to Dr. Knudsen's expert assessment of Kager's treating physicians, the ALJ independently considered the testimony and reports of *all* of Kager's treating physicians. The ALJ based many of his conclusions on the presence of ***conflicting*** evidence presented by Kager's own treating physicians, including Dr. Blaski, Dr. Eisenhauer, Dr. Goldberg, and Dr. Virji.

Further, the ALJ fairly considered Kager's subjective pain allegations. Here, the ALJ relied on ample objective evidence in the form of treating physician reports

and lab reports to conclude that Kager's testimony was not convincing.[2]

Accordingly, we should affirm the ALJ's decision which was supported by substantial evidence in the record.

---

1. *Gillett–Netting v. Barnhart,* 371 F.3d 593, 595 (9th Cir.2004).

2. See *Batson v. Commissioner of Social Security Administration,* 359 F.3d 1190, 1196–1197 (9th Cir.2004).