Lori E. DIDWAY, Plaintiff–Appellant,

v.

Michael J. ASTRUE, Commissioner of
Social Security Administration,
Defendant–Appellee.

No. 07–15540.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 24, 2008.

Filed Dec. 16, 2008.

Eric G. Slepian, Esquire, Slepian Law
Office, Phoenix, AZ, for Plaintiff–Appel-
lant.

Elizabeth Firer, Esquire, SSA–Social Security Administration, Office of the General Counsel, San Francisco, CA, for Defendant–Appellee.

Before HUG, ARCHER,* and CLIFTON, Circuit Judges.

## MEMORANDUM **

Lori E. Didway ("Mrs.Didway") appeals the district court's order granting summary judgment for the Commissioner of Social Security ("the Commissioner"), thus upholding a determination that Mrs. Didway's disability ceased on November 26, 2003. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. The parties are familiar with the facts of the case, so we repeat them here only to the extent necessary to explain our decision.

■ Mrs. Didway first asserts that the Administrative Law Judge ("ALJ") erred by not considering whether her impairments when combined with her IQ of 75 medically equaled the impairment of mental retardation, in the Listing of Impairments. 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.05(c). While Listing 12.05(c) requires an IQ of 70 or less, Mrs. Didway points to Social Security's Program Operations Manual System ("POMS"), which states that Listing 12.05(c) can be equaled if an individual possesses a slightly higher IQ (*e.g.*, 70–75) "in the presence of other physical or mental disorders that impose additional and significant work-related limitation of func-

tion." POMS § DI 24515.056(D)(1)(c), *available at* https://s044a90.ssa.gov/apps10/poms.nsf/. Contrary to Mrs. Didway's assertion, the ALJ is not required to perform a detailed analysis for every possible listing or equivalent. "The regulations merely require the Secretary to 'review the symptoms,' 20 C.F.R. § 404.1526 (1988), and make specific findings essential to the conclusion." *Gonzalez v. Sullivan,* 914 F.2d 1197, 1200 (9th Cir.1990). Here the ALJ provided a comprehensive six-page evaluation of the evidence discussing the medical evidence and its teachings. The ALJ noted that Mrs. Didway's IQ was measured at 75 (not only outside the parameters of Listing 12.05(c), but at the very high end of the range suggested in POMS for equaling 12.05(c)). The ALJ also observed that "[t]he total record indicates the claimant was functioning at a much higher level than alleged, even if her IQ testing was accurate." The ALJ's analysis and findings establish that substantial evidence supports the ALJ's conclusion that Mrs. Didway's impairments when combined with her IQ do not medically equal mental retardation under Listing 12.05(c).

Mrs. Didway next argues that the ALJ failed to give proper weight to the opinion of treating physician Dr. Williams. Mrs. Didway is correct that generally a treating physician's opinion should be given controlling weight. *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir.2007). However, "when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.' Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported

---

* The Honorable Glenn L. Archer, Jr., United States Circuit Judge for the Federal Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." *Id.* at 632.

■ Examining physician Dr. McPhee's assessment was based on independent clinical findings contained in a report documenting Mrs. Didway's ability to perform specific tasks. Specifically, Dr. McPhee noted that Mrs. Didway walked with normal gait; was able to tandem walk; was able to walk on her heels and walk on her toes; could bend forward from a standing position to where her fingertips reach her toes and resume standing again; was able to bend her trunk 20 degrees bilaterally; was able to squat and resume standing again; was able to hop; was able to remove her shoes and socks and transfer onto the examination table; had normal strength in proximal and distal muscles in all four limbs; had sensation to touch and pin prick in all four extremities; had normal range of motion of the neck, shoulders, elbows, hands, wrists, hips, knees, ankles, and feet; and had tender points at both trapezius muscles, both intrascapular muscles, both pectoral muscles, both medial elbows, both medial knees, and both trochanteric areas of the hips. In contrast, there is no report from Dr. Williams suggesting that he even examined Mrs. Didway at the time he completed his assessment. Accordingly, there is no reason to give Dr. Williams's opinion controlling weight.

Mrs. Didway contends that the ALJ rejected Nurse Practitioner Smerko's opinion because he viewed a nurse practitioner as an unacceptable medical source. The ALJ made no such statement. The ALJ noted the inconsistencies between Nurse Practitioner Smerko's reports and disregarded her opinion for this reason. This was not error.

Mrs. Didway further contends that the ALJ wrongly interpreted and applied the opinion of consulting physician Dr. Storie. We disagree. The rating that Dr. Storie actually gave was "Fair [—] Seriously Limited, but *not Precluded*" (emphasis added). In fact, the words in the rating "not [p]recluded" specifically suggest that Mrs. Didway could indeed deal with work stresses; maintain attention and concentration; and understand, remember and carry out complex job instructions to some extent. There is nothing to suggest that the ALJ's interpretation of the rating was unreasonable.

Next, Mrs. Didway asserts that the ALJ erred in not accepting her subjective pain and fatigue testimony. The ALJ cannot simply arbitrarily reject a claimant's subjective testimony. Rather, an ALJ's credibility analysis must be sufficiently clear and specific to ensure a reviewing court that he in fact did not do just that. *See Bunnell v. Sullivan,* 947 F.2d 341, 345–47 (9th Cir.1991).

■ Here, the ALJ found that Mrs. Didway's allegations as to pain and loss of functioning were not credible in view of the medical evidence of record. The ALJ noted that the total record indicated that Mrs. Didway was functioning at a much higher level than alleged, as evidenced by the results of Dr. McPhee's and Dr. Storie's tests. The ALJ also determined that Mrs. Didway's part-time work established that she could do much more than was revealed at the hearing. Accordingly, the ALJ did not arbitrarily reject Mrs. Didway's subjective testimony.

Finally, Mrs. Didway argues that the ALJ's vocational conclusions are not supported by substantial evidence. The vocational expert explained that someone with Mrs. Didway's residual functional capacity who was limited to simple repetitive work could perform work as a cashier. This

testimony is sufficient evidence for the basis of the ALJ's conclusion.

**AFFIRMED.**