BERZON, Circuit Judge,
Dissenting:
Despite evidence showing that Mitchell’s impairments changed over time, the ALJ discredited Mitchell’s testimony as to the severity of his limitations on the basis of a disability report that was two and a half years old. The ALJ should have considered whether Mitchell’s symptoms had worsened over time before disregarding his testimony. As the adverse credibility determination thus was fundamentally flawed, I would reverse for that reason alone. Compounding my concern is the fact that a different ALJ found Mitchell’s testimony credible and awarded him benefits a mere twenty days after Mitchell was denied benefits in this case. Accordingly, I respectfully dissent.
1. Social Security Administration rulings recognize that “[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time,” and that “this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms.” SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996). Rather than assume that an applicant whose assessments of his limitations worsen over time is not credible, “adjudicator[s] ... [are] to review the case record to determine whether there are any expla *313 nations for any variations in the individual's statements about symptoms and their effects.” Id.
The ALJ conducted no such review before dismissing Mitchell’s testimony on the basis of perceived inconsistencies with a function report Mitchell completed several years before the ALJ hearing. The ALJ’s failure to do so is particularly troubling because Mitchell’s treating pulmonologist diagnosed Mitchell’s sarcoidosis as “progressive.” In light of the evidence that Mitchell’s ailments were not fixed in time, checkmarks in a years old disability report are not “clear and convincing” evidence for finding Mitchell not credible. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir.2008).
2. Examination of the record demonstrates that aside from the different time period covered, some of the specific testimony that the ALJ identified as inconsistent with Mitchell’s previous report was not. For example, the ALJ found it inconsistent that Mitchell testified to only being able to lift ten pounds when he previously stated he could lift twenty. However, in his 2007 disability report, Mitchell stated that he can lift twenty pounds “occasionally” and ten pounds “frequently”; before the ALJ, he testified that he could “probably move about ten pounds” “without feeling ... the exertion with the pressure on [his] chest.” The latter statement is not inconsistent with earlier checking a box to indicate that he could lift twenty pounds on occasion. Moreover, the same examiners to which the ALJ afforded “great weight” also stated that Mitchell should not lift more than ten pounds, even occasionally.
3. Furthermore, the activities Mitchell reported in 2007 are not inconsistent with a disability finding. The ALJ found it inconsistent for Mitchell to fill out a disability report indicating he: “leaves his house alone; rides a bicycle; drives every other day up to eight miles; washes dishes and vacuums from a seated position; grocery shops every two to three weeks; cares for his children; and is able to dress, bathe, care for his hair and teeth, shave, feed himself, and use the toilet.” Most of the activities listed are “so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace.” Orn v. Astrue, 495 F.3d 625, 639 (9th Cir.2007). Therefore they were not a proper basis for discrediting Mitchell. Id.
The outlier is Mitchell’s placing a check-mark in a box indicating he rides a bicycle. However, contemporaneous treatment notes reflect that Mitchell “can ride the bike to the end of [the] block and back before getting shortness of breath.” In the context of this medical evidence, Mitchell’s statement that he rides a bicycle is not inconsistent with the evidence that he suffers from shortness of breath and is impaired. Discrediting Mitchell on the basis of this limited activity contravenes the principle that “disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.” Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.1998).
4.The final ground for discrediting Mitchell was evidence that Mitchell has not complied with his medication and diet, “suggesting] that his symptoms may not have been as limiting as the claimant has alleged in connection with this application.” The ALJ reasoned that if Mitchell were suffering from his impairments as much as he insists, he would take his medication and would be more strict with his diet.
But disability adjudicators are “not [to] draw any inferences about an individual’s symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, *314 or other information in the case record, that may explain ... failure to seek medical treatment.” SSR 96-7p at *7. Agency rules instead advise that “to determine whether there are good reasons the individual does not ... pursue treatment in a consistent manner,” disability adjudicators “may need to recontact the individual or question the individual at the administrative proceeding.” Id.
Here, the ALJ chose not to ask Mitchell about perceived inconsistencies in following recommended treatment yet relied on those lapses to discredit him. Moreover, the record is replete with explanations for Mitchell’s slip-ups. For example, the ALJ cites to a treatment note from the Heartbeat Institute stating Mitchell “has been off Coreg for i week.” But that same note explains that the stoppage was due to “insurance problems, now corrected.” The ALJ also cites to a treatment note that reflects that Mitchell “has been off [Continuous Positive Airway Pressure] CPAP” for three days. But earlier that same month, Mitchell reported that he was finding it “difficult to wear” the CPAP and was “not getting restful sleep” with it.
Finally, the ALJ’s finding that Mitchell’s noncompliance with the recommended diet supports a no-credibility finding conflicts with the law of this circuit. Om holds that failure to follow prescribed treatment is not equally probative of credibility in all eases. 495 F.3d at 637-38. “In the case of a complaint of pain, such failure may be probative of credibility, because a person’s normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief.” Id. at 638. “But in the case of impairments where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful, the approach to credibility makes little sense.” Id.
So, too, here. Unlike taking a pill to relieve pain, adherence to a low calorie diet does not offer immediate or complete relief from the problems of obesity and high blood pressure. For that reason, Mitchell’s (sporadic) noncompliance with his diet is not a clear and convincing reason for discounting his credibility.
What is clear from the overall record is that Mitchell sought treatment from his providers on a regular basis: He sought care from the Heartbeat Institute, for example, twenty-eight times between 2006 and 2009. As the overall record shows that Mitchell has consistently sought treatment for his various conditions, Mitchell’s treatment history supports, rather than undermines, his testimony about the intensity and severity of his symptoms.
5. Calling the ALJ’s credibility assessment further into question is the fact that a different ALJ found Mitchell disabled based on the same basic medical complaints twenty days after the ALJ’s denial. The “initial denial” of Mitchell’s application and this “subsequent award [are not] easily reconcilable on the record before” us. Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir.2010). As there is a “reasonable probability that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application,” at the very least, “further consideration of the factual issues is appropriate to determine whether the outcome of the first application should be different,” and particularly, whether the ALJ erred in finding Mitchell’s testimony not credible. Id.
For the foregoing reasons, I would not affirm, but would remand the denial of Mitchell’s claim to the Social Security Administration.