**Jimmie E. EVANS, Plaintiff–Appellant,**

v.

**COMMISSIONER OF the SOCIAL SECURITY ADMINISTRATION, Defendant–Appellee.**

**No. 06–36074.**

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 24, 2008.*

Filed March 25, 2009.

Robert A. Baron, Esquire, Harder, Wells, Baron & Manning, P.C., Kathryn

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Tassinari, Esquire, Kathryn Tassinari, Lawyer, PC, Eugene, OR, for Plaintiff–Appellant.

Neil Evans, Assistant U.S., Office of the U.S. Attorney, Portland, OR, Leisa Wolf, Esquire, Social Security Administration, Office of the General Counsel, Seattle, WA, for Defendant–Appellee.

Before: TASHIMA and M. SMITH, Circuit Judges, and WU,** District Judge.

### MEMORANDUM ***

Jimmie E. Evans appeals the district court's judgment affirming the Commissioner of Social Security's ("Commissioner") final decision denying his application for social security disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1383f. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.[1]

■ **1.** We agree with Evans that the Administrative Law Judge ("ALJ") erred in rejecting the opinions of the treating physician, Dr. Bogart, and the examining physician, Dr. Villanueva, in favor of the opinion of the reviewing physician, Dr. Dragovich.[2] "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.2007). Thus, the medical opinion of a treating physician is to be given more weight and, in fact, controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is ·not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). If the medical opinion of a treating physician is not given controlling weight, the factors listed in the regulation are to be considered in determining the weight to be given to the opinion. *Id.* Those factors include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the medical opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician. *Id.* §§ (d)(2)(i), (ii); (d)(3)–(6).

Dr. Bogart has been treating Evans since 2001, and he saw Evans at least ten times after his initial evaluation.[3] Dr. Bogart is a neuropsychiatrist; therefore, these are "medical issues related to his ... area of specialty." *Id.* § (d)(5). Dr. Bogart's opinion is consistent with the opinions of Dr. Villanueva and Dr. Higgins–

** The Honorable George H. Wu, United States District Judge for the Central District of California, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The district court's decision upholding the denial of social security benefits is reviewed de novo. *Gillett–Netting v. Barnhart*, 371 F.3d 593, 595 (9th Cir.2004). "The Commissioner's denial of benefits may be set aside when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record." *Id.*

2. Because the parties are familiar with the complicated factual and procedural background, we do not recite it here, except as necessary to aid in understanding this disposition.

3. Contrary to the ALJ's statement that Dr. Bogart found Evans' diagnoses "confusing," Dr. Bogart actually indicated that there was no uncertainty regarding whether or not Evans had limitations in his daily living activities, but that neuropsychiatric testing was needed in order to determine the extent of those limitations.

Lee, both examining physicians, as well as with all of the other medical opinions, diagnoses, and evaluations of Evans. For example, Dr. McCullough, who began treating Evans in 2002, described Evans as limited to a sedentary level of activity due to his physical ailments and psychiatric limitations, which included post-traumatic stress disorder ("PTSD") and "bipolar with schizophrenic features." The record consistently indicates that, in addition to his numerous physical ailments, Evans had significant psychiatric/psychological and social problems, as well as difficulties with anger, concentration, and intellectual functioning that would affect his ability to work.[4]

Dr. Bogart's opinion should be given controlling weight because it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). In addition, Dr. Bogart's opinion was not contradicted by any treating or examining physician, but only by a physician who reviewed the record and whose opinion the ALJ adopted.

When a treating physician's opinion is contradicted by another physician, the ALJ may not reject the treating physician's opinion "without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Orn,* 495 F.3d at 632 (quoting *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995)). The opinion of an examining physician who relies on the same clinical findings as a treating physician "but differs only in his or her conclusions," does not constitute substantial evidence. *Id.* Rather, in order to reject the treating physician's conclusions, the ALJ must point to " 'independent clinical findings that differ from the findings of the treating physician.' " *Id.* (quoting *Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir. 1985)). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citations omitted).

The ALJ did not point to any conflicting clinical evidence or make findings to indicate why Dr. Bogart's opinion should be rejected. Dr. Bogart, a medical doctor, examined and treated Evans at least ten times. Dr. Villanueva, a neuropsychologist, examined Evans. Dr. Dragovich, a Ph.D., reviewed Evans's record and came to a different conclusion from Drs. Bogart and Villanueva. Dr. Dragovich did not make any diagnoses or rely on clinical

---

4. Evaluations by Russ Howard and Dr. Higgins–Lee indicated post-traumatic stress disorder, rheumatoid arthritis, borderline intellectual functioning, and deficiencies in concentration. Dr. Villanueva's neuropsychological examination found deficiencies in processing, memory, and the "ability to integrate visual and motor activity." Dr. McCullough, Evans' primary care physician for over two years, diagnosed Evans with, among other ailments, hepatitis C, back pain, osteoarthritis, bipolar disorder, PTSD, impulse control problems, and impaired ability to concentrate. Treating physician Dr. Weingarten reported hepatitis C and a possible back strain causing back pain. Dr. Leslie, an examining physician, diagnosed hypertension, osteoarthritis, back pain, PTSD, and impulse control disorders. Dr. Van Anrooy examined and treated Evans for elbow pain and swelling from a degenerative joint disease, and he performed surgery on Evans's elbow. The ALJ's findings that Evans does not, for example, have PTSD or arthritis are directly contradicted by the record. In addition, although the ALJ relied on testing by Ben Ross to support his rejection of Dr. Villanueva's opinion, Ross' findings of "low" "cognitive aptitudes" and "significant cognitive weakness" in processing information are consistent with Dr. Villanueva's findings.

findings or objective medical tests that Evans's treating and examining physicians overlooked. The ALJ's adoption of Dr. Dragovich's opinion and rejection of the opinions of Evans's treating and examining physicians (and, in fact, the numerous other medical opinions contained in the record) are not supported by the record.

Even if the ALJ finds the treating physician's medical opinion not well-supported or inconsistent with the record, this "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Id.* (quoting Social Security Ruling 96–2p). In such a case, the ALJ is to consider the factors enumerated in 20 C.F.R. § 404.1527(d)(2), such as the length of the treatment relationship and the frequency of examination. Here, the ALJ did not consider any of the requisite factors in determining the weight to be given Dr. Bogart's opinion. The ALJ therefore erred in failing to comply with the regulation setting forth how to treat medical opinions. *See Terry v. Sullivan,* 903 F.2d 1273, 1275 (9th Cir.1990) (stating that "[f]ederal statutes, administrative regulations and Social Security rulings together form a comprehensive scheme of legal standards that ALJs must follow in determining whether a claimant is entitled to disability benefits") (footnote omitted).

2. We agree with Evans that the posthearing evidence he submitted supported his argument that the ALJ's decision was not supported by substantial evidence. *See Vasquez v. Astrue,* 547 F.3d 1101, 1109 (9th Cir.2008) (stating that, "if the Appeals Council had remanded the case for additional review, [the evidence submitted following the ALJ's decision] would have enhanced the information available to the ALJ and provided additional, rather than contradictory, evidence of Vasquez's condition"). The post-hearing evidence submitted by Dr. McCullough and Dr. Moulton

was material because it substantiated all of the other medical evidence in the record that the ALJ improperly rejected. Further, Dr. McCullough's August 10, 2004, letter, describing Evans's "near death experience" during a twelve-day stay in intensive care, numerous problems related to his diabetes, and his need for a liver transplant, indicated that Evans's physical ailments had become more serious and should have been considered in a determination of disability.

3. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001). An ALJ may discount lay testimony if it conflicts with medical evidence. *Id.* The ALJ rejected the testimony of Evans' lay witnesses by citing anecdotal evidence that Evans, for example, "attended school and church, and worked out at a gym, . . . used the internet and managed some household chores." The ALJ also cited Evans' ability to do things such as work on his car and attend community college.

" 'This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.' " *Orn,* 495 F.3d at 639 (quoting *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.2001)). Instead, "[t]he ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir.2005)) (second alteration in original).

The ALJ did reason that the fact that Evans takes GED courses indicates that

he has the ability to concentrate and complete tasks within a schedule. Unfortunately, the ALJ did not take into consideration Evans' January 2004 elbow surgery and the resultant complications, or his complications due to his need for a liver transplant. Moreover, the November 2004 letter by Dr. Moulton indicated that Evans' GED courses were "self-paced," indicating that he did not need to adhere to a schedule that was imposed on him.

Because we conclude that the ALJ improperly rejected the opinions of Evans's treating and examining physicians, the ALJ's finding that the lay witness testimony was contradicted by the medical evidence also is not supported by the record.[5]

4. As to the finding that Evans could perform other relevant work, the hypothetical posed to the vocational expert was faulty because it did not include all of Evans's limitations. Here, the ALJ stated in step two of the five-step analysis that Evans "has the following severe impairments: a past history of back trauma; liver disease with hepatitis C and cirrhosis; degenerative changes of the left elbow with arthroplasty; status-post right hand fusion; an organic brain disorder; and a history of substance abuse now in sustained remission." If an ALJ finds severe impairments at step two, those impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. § 404.1523.

" 'Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant. . . .' " *Magallanes v. Bowen,* 881 F.2d 747, 756 (9th Cir.1989) (quoting *Embrey v. Bowen,* 849 F.2d 418, 422 (9th

Cir.1988)). The ALJ posited that Evans was able to perform light work, which requires "maximum lifting of twenty pounds and frequent lifting of ten pounds," as well as a limitation of "walking no more than 4 hours a day." This hypothetical does not take into account the impairments that the ALJ found. In addition, because of the ALJ's improper rejection of the opinions of Evans' examining and treating physicians, the failure to take into account the additional evidence, and the rejection of the lay witness testimony, "the hypothetical posed to the vocational expert was legally inadequate." *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 886 (9th Cir.2006).

For the foregoing reasons, the judgment of the district court is reversed and the case remanded with instructions to remand to the Commissioner for further proceedings consistent with this disposition.

**REVERSED and REMANDED.**

M. SMITH, Circuit Judge, dissenting:

I would hold that the district court properly affirmed the Commissioner of Social Security's final decision denying Jimmie Evans's application for social security disability insurance benefits. I address each of the majority's points in order.

1. The Administrative Law Judge did not err in rejecting the opinions of Dr. Bogart and Dr. Villaneuva. Dr. Bogart's opinion was based in part on Evans's self-reporting, which the ALJ found non-credible. An ALJ may appropriately reject a physician's opinion that is based on a claimant's non-credible subjective complaints. *Thomas v. Barnhart,* 278 F.3d 947, 957 (2002). Further, the ALJ's opin-

---

5. In addition, we find specious the ALJ's statement that the lay witnesses' testimony was not credible because it was consistent with the claimant's position. The lay witness testimony was based on the witnesses' "inde-

pendent observations of the claimant's pain and other symptoms," and therefore could be discounted only if the ALJ gives "reasons that are germane to each witness." *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir.1993).

ion pointed to specific and legitimate conflicting clinical evidence when rejecting Dr. Bogart's opinion. The ALJ noted that Dr. Bogart's assessment of a "marked" impairment in social functioning was contradicted by his own notes showing that Evans was doing well at community college. Further, contrary to the majority's assessment, the ALJ did not reject the opinion of Dr. Bogart outright, it specifically considered Dr. Bogart's opinion insofar as it was supported by the record, in relation to Evans' interpersonal difficulties.

The majority also concluded that the ALJ erred by rejecting the opinion of Dr. Villaneuva. Dr. Villaneuva concluded that Evans had "marked" limitations. The ALJ noted that Dr. Villaneuva's GAF analysis (60) and his finding of "markedly impaired" memory were contradictory. A GAF assessment of 60 indicates only moderate limitations, not "marked limitations." An ALJ may cite internal inconsistencies in evaluating a medical source statement. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.2005). This inference was reasonably drawn and sufficiently specific.

2. The majority argues that the post-hearing evidence was material because it described a twelve-day stay in the intensive care unit related to his diabetes from 7/16/04–7/28/04. The administrative hearing was held 3/24/04, four months prior to this hospital stay. Evans's diabetes was not a significant issue at the hearing. While post-hearing evidence can be material if there is a reasonable possibility that the new evidence would have changed the outcome of the ALJ hearing, when the evidence relates to events or diagnoses that occurred after the hearing, it is immaterial. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir.2001). I would find that the post-hearing evidence does not require this Court to overturn the ALJ's decision.

3. As the majority states, an ALJ may discount lay testimony if it conflicts with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001). An ALJ may not reject lay testimony without explanation, but may reject the testimony if it is inconsistent with the medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). Here, the ALJ did not discount all of Ms. Smith's testimony; he just found it inconsistent. The majority argues that the ALJ did not take into consideration Evans's arthritis and elbow surgery. In fact, the ALJ noted that while Ms. Smith testified regarding Evan's hand/elbow pain, this testimony was inconsistent with evidence of Evans driving, working on his car, and completing community college classes successfully (which entailed significant writing). I would find that the ALJ clearly articulated "arguably germane reasons" for dismissing Ms. Smith's testimony, as required by our circuit. *Lewis*, 236 F.3d at 512.

4. Finally, I would find that the ALJ properly determined Evan's residual function capacity. The majority argues that "the hypothetical posed to the to the vocational expert was faulty because it did not include all of Evan's limitations." Majority Disposition at 597. Under our circuit's law, there is no requirement that the hypothetical contains all potential limitations if they are not supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir.2001)(an ALJ can accept or reject limitations in a hypothetical when they are not supported by substantial evidence). The hypothetical given by the ALJ contained reasonable limitations, supported by the record.

For the foregoing reasons, I would affirm the district court.