NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GREGORY HOSTRAWSER | No. 08-17474 |
| Plaintiff - Appellant, | D.C. No. 2:07-cv-02098-JAT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted January 15, 2010
San Francisco, California

Before: WALLACE, HUG, CLIFTON, Circuit Judges.

Gregory Hostrawser appeals the district court's summary judgment in favor

of the Commissioner of Social Security ("Commissioner") affirming the denial of

Hostrawser's application for disability insurance benefits. We have jurisdiction

pursuant to 28 U.S.C. § 1291. We reverse and remand for an award of benefits.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

We review the district court's decision in a social security case de novo. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Social Security Administration's ("SSA") disability determination is upheld unless it contains legal error or is not supported by substantial evidence. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). We consider the entire record as a whole and may not affirm simply by isolating "a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630.

In determining whether an applicant is disabled, the Administrative Law Judge ("ALJ") must perform a five-step sequential analysis until a finding of disability is affirmatively rejected or established. 20 C.F.R. § 404.1520(a). At the first step, the applicant's work activity, if any, is considered. *Id.* At the second and third steps, the medical severity of the applicant's impairment(s) is considered. *Id.* At the fourth step, the SSA considers its assessment of the applicant's residual functional capacity and past relevant work. *Id.* At the fifth and last step, the SSA considers its assessment of the applicant's residual functional capacity and his/her age, education, and work experience. *Id.* An individual is determined to be under a disability "if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *Reddick v. Charter*, 157 F.3d 715, 721 (9th Cir. 1998).

At the third step of the analysis in the present case, the ALJ found that Hostrawser has the residual functional capacity to perform light work. In doing so, the ALJ gave little weight to Hostrawser's treating physicians, but significant weight to the Commissioner's non-treating physicians. The ALJ also found Hostrawser's subjective symptom testimony not to be credible. At step five, the ALJ found Hostrawser not disabled within the meaning of the Social Security Act. At issue is whether the ALJ erred in disregarding the opinions of Hostrawser's physicians and Hostrawser's testimony. We find this to be the case.

## I. Weight Assigned to the Opinions of Claimant's Treating Physicians

The opinions of the applicant's treating physicians are entitled to more weight than the opinions of doctors who do not treat the claimant. *See* 20 C.F.R. § 404.1527(d)(2); *Orn*, 495 F.3d at 631-32. Only if there is substantial evidence in the record contradicting the opinion of the treating physicians are their opinions no longer entitled to controlling weight. *Orn*, 495 F.3d at 632; *see also* SSR No. 96-2p, 1996 SSR LEXIS 9, at *1-2. Even so, a treating physician's opinion is still

entitled to deference. *Id.* If an ALJ decides to disregard the opinion of the treating physicians, he or she must make findings setting forth detailed, legitimate reasons for doing so and not simply offer his or her own conclusions. *Orn*, 495 F.3d at 632.

Here, Hostrawser's three treating physicians found him incapable of working at all. Two specifically found him incapable of performing even sedentary level work on a sustained basis because of Hostrawser's chronic back problem. The physicians also noted Hostrawser's separate leg pain issue, noting that medication for that had made his life bearable. The physicians also recommended that Hostrawser lose weight. These doctors' reasoned, detailed conclusions were based on several medical examinations of both Hostrawser's leg and back issues over, in the case of one doctor, eight months and eighteen office visits. Nonetheless, the ALJ gave little weight to the opinions of these treating physicians as well as a state agency medical consultant who also found Hostrawser disabled.

Instead, the ALJ gave significant weight to two of the Commissioner's non-treating physicians. One of these saw Hostrawser only once and stated his difficulty in providing any diagnosis of Hostrawser. Regardless, this doctor

4

concluded that Hostrawser was not disabled by checking off a number of boxes on a pre-filled form without listing any reasons for each of the conclusions.

Another of the Commissioner's non-treating physicians, Dr. Fujikami, never personally examined Hostrawser, but instead relied solely on documentation provided by a third non-treating doctor who noted Hostrawser's constant back pain and decreased range of the lumbar spine, but also commented that Hostrawser was able to perform some simple physical functions. Dr. Fujikami copied most of these findings onto a pre-filled form without providing separate explanations for his conclusion that Hostraswer was not disabled. All three non-treating doctors focused unduly on Hostrawser's obesity and leg pain, although the problem for which he sought disability benefits was his back pain.

These scant conclusions of the non-treating physicians do not constitute substantial evidence of clear and convincing reasons to reject the reasoned opinions of Hostrawser's treating doctors, who were thoroughly familiar with Hostrawser's medical problems and who unanimously found him unable to work. Their conclusions were thus entitled to controlling weight. *Orn*, 495 F.3d at 631-32.

Moreover, the ALJ failed to set forth specific, legitimate reasons for disregarding the conclusions of Hostrawser's doctors. "This can be done by setting

5

out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* at 632 (citation omitted). Here, the ALJ's decision to give little weight to Hostrawser's treating doctors was based on the evidence as a whole, the fact that Hostrawser's pain medication was effective in relation to his leg pain, and the fact that Hostrawser was able to perform some part-time plumbing work. The first reason is too conclusory to satisfy legal requirements. In focusing unduly on Hostrawser's leg pain, the ALJ failed to explain why the medical evidence provided by Hostrawser's treating doctors as to the determinative medical issue – Hostrawser's back pain – should be set aside. The fact that Hostrawser could perform some light level plumbing on a part-time basis also does not present a clear and convincing reason explaining why the ALJ's interpretations, rather than those of the treating physicians, were correct. *Id.*

## II. Hostrawser's Credibility

If an ALJ finds that a claimant's testimony as to the severity of his or her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did

6

not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may consider at least the following factors when weighing the claimant's credibility: claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between his/her testimony and his/her conduct, claimant's daily activities, his/her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Id.* at 958-59.

Here, the ALJ disregarded Hostrawser's subjective symptom testimony, finding Hostrawser not credible for five reasons. First, the ALJ cited Hostrawser's non-disclosure of income to the Social Security Administration both before and after his disability application whereas medical records showed that Hostrawser had performed some part-time light plumbing work after the disability onset in October of 2004. Clearly, we do not condone Hostrawser's faulty income reporting. However, this is just one discrepancy in his testimony and one that is unrelated to the medical symptoms and physical limitations at issue in this case. The rest of the record shows a genuine medical and physical problem. Further, the ALJ acknowledged that the work performed by Hostrawser after the disability onset date amounted to no more than $300 per month and thus did not constitute substantial gainful activity for Social Security purposes. The medical records cited

7

to by the ALJ do not contradict this. Rather, they indicate that Hostrawser only occasionally engaged in minor plumbing activities and only within his limited physical capacity. This matches Hostrawser's testimony that he undertook such sporadic and minor work for family and friends, but only if and when he could. Hostrawser's failure to report income in 1994-98 does not in itself warrant a non-credibility finding in relation to his medical testimony six to ten years later. Hostrawser cooperated with all five examining doctors and there was objective medical evidence that supported his descriptions of his pain and limitations.

Second, the ALJ found Hostrawser not credible due to his failure to lose weight despite his doctors' recommendations. However, a claimant's failure to follow prescribed treatment for obesity will rarely be used to deny benefits. SSR No. 02-1p, 2002 SSR LEXIS 1, at *25. "[T]he failure to follow treatment for obesity tells us little or nothing about a claimant's credibility." *Orn*, 495 F.3d at 638. The ALJ thus erred in this respect.

Third, the ALJ found Hostrawser not credible because he continued to perform "heavy" part-time plumbing work and other handyman jobs after the disability onset date despite being advised not to. However, the record shows that Hostrawser only performed the amount and extent of work that he was able to within his limited capabilities and not the heavy work cited to by the ALJ. "The

Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Thus, discrediting Hostrawser's testimony as to his limitations was not warranted.

Finally, the ALJ noted that Hostrawser had traveled a few times for personal purposes and that he leads an active lifestyle in which he can, among other things, shop, do chores, and use the computer. However, daily activities may only form the basis of an adverse credibility finding if the claimant is able to spend "a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting . . . ." *Id.* (emphasis omitted). "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639 (omission in original). "In evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's 'ability to work on a *sustained* basis.'" *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996) (emphasis in original). "Occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." *Id*. The fact that Hostrawser could perform the listed normal activities of daily living and occasionally travel does not equate to being able to undertake the physical functions that would be required on a

9

sustained basis in a work setting matching Hostrawser's skills and background. The ALJ thus erred in this respect as well.

In sum, the ALJ's reasons for disregarding the thoroughly reasoned opinions of Hostrawser's treating doctors in favor of much less substantiated opinions by non-treating doctors and for discrediting Hostrawser's subjective symptom testimony were insufficient. Because the weight of the medical evidence here, when given the effect required by law, demonstrates that Hostrawser was unable to perform even sedentary work on a sustained basis, we reverse the decision of the district court and remand for an award of benefits.

**REVERSED AND REMANDED.**

*Hostrawser v. Astrue*, No. 08-17474

WALLACE, Circuit Judge, dissenting:

I respectfully dissent from the majority disposition of this case. I would affirm the district court's denial of social security benefits.

**I.**

I believe that the ALJ set forth specific and legitimate reasons for rejecting the opinions of Mr. Hostrawser's treating physicians, and instead crediting the opinions of examining physician, Dr. Rand, and a non-examining state agency physician, Dr. Raymond Fujikami, that Mr. Hostrawser was limited to light exertion with some postural limitations. The opinions of Dr. Rand and Dr. Fujikami can constitute "substantial evidence" supporting the rejection of treating physicians' opinions. Even assuming that both Dr. Rand and Dr. Fujikami should be considered non-examining physicians, "opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). That standard was met here.

Treating physician Dr. Armold opined that Mr. Hostrawser could lift less than 10 pounds, stand less than a half-hour, and sit for one-half to one hour in a workday. The ALJ accorded this opinion "little weight" because "the evidence as

a whole supports a conclusion that the claimant would be able to do a light level of exertion," citing evidence that Mr. Hostrawser's leg pain improved significantly with injections. The majority argues that the reduction in Mr. Hostrawser's leg pain was not a proper basis for rejecting the treating physicians' opinions because his main problem was back pain. However, as the district court stated, Mr. Hostrawser's hearing testimony discussed both leg and back pain. I do not think it was unreasonable for the ALJ to conclude that reduction in his leg pain would reduce his overall pain symptoms and increase his ability to work.

Similarly, treating physician Dr. Steingart opined that Mr. Hostrawser was not capable of working. The ALJ, however, pointed to Dr. Steingart's own observations, on more than one occasion, that Mr. Hostrawser's leg pain had improved significantly. Moreover, Dr. Steingart's opinion appears to be based in large part on Mr. Hostrawser's own subjective reports of his pain, which the ALJ reasonably found to be less than fully credible, as discussed in Part I, above. *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009) (where treating doctor's prescribed work restrictions were based on claimant's subjective characterization of her symptoms, and the ALJ determined that the claimant's description of her limitations was not entirely credible, "it is reasonable to discount a physician's prescription that was based on those less than credible statements").

2

Finally, treating physician Dr. Porter and his colleague Nurse Practitioner Stillwell opined that Mr. Hostrawser could lift less than 10 pounds, stand for less than two hours, and sit for less than 6 hours. The ALJ gave this opinion "little weight because such extreme limitations are inconsistent with" Mr. Hostrawser's reports to Dr. Porter that he was satisfied with the medications he received and the fact that he continued to do part-time plumbing work. I believe this conclusion is also legitimate and supported by substantial evidence. Mr. Hostrawser's statements regarding his satisfaction with his medications are at least somewhat probative that he found that level of pain control acceptable. Dr. Porter's opinion could also reasonably be seen as inconsistent with the fact that Mr. Hostrawser was able to do at least some plumbing jobs. As the district court observed, this case is distinguishable from *Lingenfelter v. Astrue*, where the claimant "tried to work for nine weeks . . . and failed." 504 F.3d 1028, 1039-40 (9th Cir. 2007). Rather, the record shows some evidence that he succeeded in working part-time for about two years and even advertised his services. Again, such evidence does not necessarily show that he was capable of sustaining heavy plumbing work full-time, but it can serve as a specific and legitimate reason why the ALJ chose not to rely on the treating physicians' limitations.

## II.

I also believe that the ALJ set forth specific, clear, and convincing reasons for rejecting Mr. Hostrawser's testimony regarding the severity of his symptoms.

First, the ALJ relied on Mr. Hostrawser's failure to disclose income to the Social Security Administration, even though he admitted that during the relevant time periods he performed some part-time plumbing work and also did some work buying, fixing up, and renting out rental properties. While this work may not have resulted in significant income, the work did not need to constitute "substantial gainful activity," as the majority suggests; the point is that he did not report what money he did make. An ALJ may use "ordinary techniques of credibility evaluation," and as long as he "makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc). The ALJ did not cite Mr. Hostrawser's earning records to show that he engaged in substantial gainful activity, but to show a lack of candor, and I believe that this is a clear and convincing reason for finding Mr. Hostrawser not fully credible. I cannot brush off this obvious lack of truth, as does the majority, as "faulty income reporting" or a

4

"discrepancy." The ALJ properly could find this a demonstration of a lack of candor.

Second, I believe that the ALJ provided an additional clear and convincing reason for discrediting Mr. Hostrawser's symptom testimony by pointing to his international travel. At the hearing, Mr. Hostrawser testified that he took two trips, one to the Ukraine and one to Minnesota. However, the medical record reflected two overseas trips. On January 10, 2005, his doctor noted that he had just returned from Europe the night before, and on November 21, 2005, medical records show that he hurt his knee while traveling in Russia the week before. The ALJ could have reasonably inferred that Mr. Hostrawser was not fully truthful about his travel at the hearing. Moreover, two trips from Arizona to the Eurasian continent over the course of one year could reasonably be viewed as inconsistent with Mr. Hostrawser's self-described pain symptoms; it is difficult to see how someone who can only sit for about half an hour and must lie down for seven hours in an eight-hour day due to his pain could take two round-trips involving very long airplane flights. The majority argues that this travel does not show he was capable of the physical functions required for full-time work, but again, that misstates the inquiry. The ALJ did not cite Mr. Hostrawser's travel as proving that he could perform any specific full-time job; rather, the ALJ pointed to the travel as a reason why he did

5

not fully credit Mr. Hostrawser's testimony regarding the severity of his pain. Because the evidence of Mr. Hostrawser's travel suggests both that he was not fully candid at his hearing and that his physical limitations were not as severe as he described them to be, I would hold that this was an additional clear and convincing reason for discrediting Mr. Hostrawser's symptom testimony.

For the foregoing reasons, I respectfully dissent.